UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. CLAIR MARINE SALVAGE, INC.,

       Plaintiff and Counter-Defendant,

       Case No. 13-14714

v.

       Hon. Patrick J. Duggan

M/Y BLUE MARLIN, MC No. 5937 RL,
*in rem*, and STEVEN J. LEBOWSKI, *in
personam*,

       Defendants and Counter-Plaintiffs,

and

STEVEN J. LEBOWSKI, and M/Y BLUE
MARLIN, MC No. 5937 RL,

       Third-Party Plaintiffs,

v.

BOATUS, BOAT AMERICA, WEST MARINE
PRODUCTS CORPORATION, and BOAT/US,

       Third-Party Defendants.

_____/

## OPINION AND ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS

       This is an admiralty case arising out of Plaintiff and Counter-Defendant St.

Clair Marine Salvage, Inc.'s ("St. Clair") salvage of a recreational boat.  St. Clair

instituted this action against Defendant and Counter-Plaintiff M/Y Blue Marlin,

No. 5937 RL (the "Vessel") *in rem* and against its owner, Defendant, Counter-

Plaintiff, and Third-Party Plaintiff Steven J. Lebowski, *in personam* to enforce a

maritime lien in connection with the salvage, claiming that Lebowski owes in

excess of $16,200 in labor costs and other damages.  Defendants brought *in

personam* counterclaims, alleging a variety of claims in connection with the

salvage.  Defendants also filed a Third-Party Complaint containing five counts

against BoatU.S., Boat America, West Marine Products Corporation, and Boat/US

Foundation (collectively, "Third-Party Defendants").

Presently before the Court is Third-Party Defendants' Motion to Dismiss

filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  In this motion, which

has been fully briefed and was the subject of a motion hearing conducted on May

19, 2014, Third-Party Defendants seek dismissal of four of five counts contained in

the Third-Party Complaint.  For the reasons stated herein, Third-Party Defendants'

Motion to Dismiss is granted.

## I.      BACKGROUND

### A.    Factual

On August 24, 2013, while operating his recreational 1997 fifty-five foot

Sea Ray Sedan Bridge named M/Y Blue Marlin (the "Vessel"), Lebowski and his

Vessel ran aground in Lake St. Clair near Gull Island.  (Third-Party Compl. ¶¶ 13-

14.)  After unsuccessfully attempting to free the Vessel, Lebowski contacted

BoatU.S., a company with which Lebowski had previously contracted to provide ungrounding and towing services.  (*Id.* ¶ 15.)  BoatU.S. dispatched St. Clair, its local contact, to provide assistance.  (*Id.*)

According to St. Clair, representatives arrived in a salvage vessel to find "the Vessel hard aground in approximately [two] feet of water."  (Compl. ¶ 10.) Because Lebowski's agreement with BoatU.S. provided coverage for only soft groundings, "St. Clair and Lebowski entered into a Salvage Agreement" providing that Lebowski would pay $250 per foot of the Vessel if St. Clair successfully salved the Vessel.  (*Id.* ¶ 11.)  "Due to the size of the Vessel and the depth of water it was aground in, St. Clair dispatched a second salvage vessel equipped to clear and dredge under the Vessel and pull it into deeper water."  (*Id.* ¶ 12.)  After ungrounding the Vessel and pulling it into deeper water, St. Clair discovered that the Vessel had been rendered inoperable due to damage from the grounding.  (*Id.* ¶ 14.)  Lebowski agreed to pay St. Clair $ 250 per hour to tow the Vessel to port. (*Id.* ¶ 15.)  It took approximately three hours to tow the Vessel.  (*Id.* at 3.)

According to Lebowski, the Vessel "ran aground on a sand bar."  (Third-Party Compl. ¶ 14.)  This, according to Lebowski, was a soft grounding.  (*Id.* ¶ 21.) As a soft grounding, the BoatU.S. policy should have covered the cost of St. Clair's work.  (*Id.* ¶ 22.)  Despite the fact that it was a soft grounding, St. Clair represented otherwise and further indicated that "Lebowski would have to agree to

3

a separate salvage contract in order to have the boat removed from the sandbar."

(*Id.* ¶ 17.)  Based on St. Clair's alleged misrepresentation, "Lebowski allowed St.

Clair to unground the [Vessel]."  (*Id.* ¶ 18.)  At this point, "[a] line was thrown

from [St. Clair's] vessel to Lebowski's boat and after a quick tug the boat was

freed from the sandbar."  (*Id.* ¶ 19.)  The ungrounding of the Vessel "took less than

a few minutes."  (*Id.* ¶ 20.)

### B.    Procedural History [1]

On November 14, 2013, St. Clair instituted this action against the Vessel *in*

*rem* and Defendant and Counter-Plaintiff Lebowski *in personam* for enforcement

of a maritime lien (by way of arrest and sale of the Vessel), breach of contract, and

unjust enrichment.  (Compl., ECF No. 1.)

Lebowski filed a Third-Party Complaint containing the following counts

against Third-Party Defendants on December 20, 2013: Count I – Breach of

Contract; Count II – Fraud; Count III – Innocent Misrepresentation; Count IV –

Negligence; and Count V – Violation of the Michigan Consumer Protection Act

("MCPA"), Michigan Compiled Laws § 445.901, *et seq*.  (ECF No. 15.)

---

[1] The procedural history included herein does not encompass the
counterclaims Lebowski asserts against St. Clair, the arrest warrant issued for the
Vessel, or the previously-adjudicated motion filed by Lebowski seeking to stay the
execution of the arrest warrant in exchange for the posting of bond.  The bond
issue was addressed in an Opinion and Order dated May 21, 2014, and the facts
pertinent to that motion are described therein.  St. Clair has not sought dismissal of
Lebowski's Amended Counter-Complaint and the Court, therefore, has not had the
occasion to analyze the claims asserted against St. Clair.

On February 3, 2014, Third-Party Defendants filed a timely motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28.) Lebowski responded on February 21, 2014, (ECF No. 30), and Third-Party Defendants replied on March 7, 2014, (ECF No. 31).

## II.    GOVERNING LEGAL STANDARD AND CHOICE OF LAW

### A.    Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) allows a court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*,

5

550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).  In this regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant" is responsible for the conduct alleged in the complaint.  *Id.* (citation omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim *showing* that the pleader is entitled to relief[.]") (emphasis added).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the

6

court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

**B.      Choice of Law: Maritime Law or Michigan Law**

Maritime law "governs any contract action which primarily makes reference to maritime services or transactions." *Princess Cruises v. Gen. Elec.*, 950 F. Supp. 151, 153 (E.D. Va. 1996), *rev'd on other grounds*, 143 F.3d 828 (4th Cir. 1998). As an authoritative treatise on the subject of admiralty law explains:

> [I]t is now settled law that the jurisdiction of admiralty in contract depends upon the subject matter of the contract.  If the nature and character of the contract is maritime, that is to say, if the contract is related to a maritime service or maritime transaction, there is admiralty jurisdiction.

1-XII Benedict on Admiralty § 181 (7th ed. 1980) (collecting cases).  The contract at issue in the Third-Party Complaint relates directly to marine towing and other maritime-related services to be performed for the benefit of vessels operating on the navigable waterways of the United States.  (Third-Party Compl. ¶ 10 ("Lebowski and BoatUS entered into an agreement wherein, for an annual fee, BoatUS represented that it would provide marine assistance in grounds and towing of Lebowski's boat[.]").)  Accordingly, this is an action within the admiralty and maritime jurisdiction of this Court as contemplated by 28 U.S.C. § 1333, 46 U.S.C.

§ 31301(5)(F), 46 U.S.C. § 31326, Rule 9(h) of the Federal Rules of Civil

Procedure, and Rule C of the Admiralty Rules.[2]

Although the rule is not without exception, as a general matter, "[w]ith

admiralty jurisdiction comes the application of substantive admiralty law." *E.*

*River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864, 106 S. Ct. 2295,

2298-99 (1986) (citation omitted). *But see BVI Marine Constr. v. ECS-Florida,*

*L.L.C.*, No. 12-80225, 2013 U.S. Dist. LEXIS 178883, at * 8 (S.D. Fla. Dec. 20,

2013) ("[T]he questions of whether admiralty is a proper basis for jurisdiction and

whether maritime or state law should apply are different matters.") (citing, *inter*

*alia*, *Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1533 (11th Cir. 1990)).

Third-Party Defendants ask this Court to apply substantive maritime law under the

general rule announced above whereas Lebowski seeks application of Michigan

law on the basis that Michigan has a powerful interest in protecting its residents

from fraud, misrepresentation, and unfair or deceptive trade practices.   While the

Court does not disagree with the state's interests asserted by Lebowski, the Court

is not persuaded that the outcome of this case differs depending on which law is

applied.

---

[2] In addition to involving a maritime contract, the Third-Party Complaint's
allegations of a maritime tort provide a second basis for invoking this Court's
admiralty and maritime jurisdiction.  The Court need not, however, address this
jurisdictional basis as the existence of a maritime contract establishes federal
subject matter jurisdiction.

# III.   ANALYSIS

## A.   The Parties' Arguments

The Third-Party Complaint contains the following counts against Third-Party Defendants: Count I – Breach of Contract; Count II – Fraud; Count III – Innocent Misrepresentation; Count IV – Negligence; and Count V – Violation of the MCPA.  The first count alleges a material breach of the towing agreement that Lebowski entered into with BoatU.S.  Counts II and III allege that BoatU.S. misrepresented material facts regarding coverage for ungroundings and towings, that BoatU.S.'s agent, St. Clair, misrepresented the nature of the grounding so as to entice Lebowski to enter into a salvage agreement, and that BoatU.S. knew or should have known that St. Clair was making such misrepresentations.  Count IV involves BoatU.S.'s purported breach of its duty to exercise reasonable care in the selection and retention of agents providing marine assistance to BoatU.S. members.  Count V alleges unfair, unconscionable, and deceptive practices in the course of trade or commerce.  As relief, Lebowski seeks monetary damages covering his losses, exemplary damages, statutory interest, and attorney's fees.[3]

Third-Party Defendants have moved to dismiss Counts II-V, in other words, all counts except for the breach of contract count.  The thrust of Third-Party

---

[3] Somewhat curiously, Lebowski acknowledged receiving a check in the amount of approximately $11,000 from BoatU.S. in connection with the ungrounding at issue in this case.  (*See* ECF No. 30 at 4.)  According to Lebowski, St. Clair "submitted a claim to the insurer, which cut [him] a check[.]"  (*Id.*)

9

Defendants' argument in support of dismissal is that maritime law governs this

case in its entirety, that the maritime economic loss doctrine precludes Lebowski's

tort claims for economic damages, and that this dispute is properly categorized as a

breach of contract case in which tort claims have no place.  In the alternative,

Third-Party Defendants contend that even if Michigan law does apply, Michigan's

economic loss doctrine also requires dismissal of Counts II-V.

**B.     Maritime Economic Loss Doctrine**

The economic loss rule, initially deemed applicable in the maritime context

by the Supreme Court in *East River Steamship Corporation*, 476 U.S. 858, 106 S.

Ct. 2295, generally provides that a tort action may not lie where the basis for

liability arises from a contract.  *See, e.g.*, *Kingston Shipping Co. v. State of

Florida*, 667 F.2d 34, 35 (11th Cir. 1982) (explaining that in admiralty, the

economic loss rule provides that "a party may not recover for economic losses not

associated with physical injury").  In *East River*, a products liability case, the

Supreme Court held that a "manufacturer in a commercial relationship has no duty

under either a negligence or strict products-liability theory to prevent a product

from injuring itself." 476 U.S. at 871, 106 S. Ct. at 2302.  The Supreme Court

explained: "When a product injures only itself, the reasons for imposing a tort duty

are weak and those for leaving the party to its contractual remedies are strong."  *Id.*

10

It is indeed true that the Supreme Court did not address "whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic." *Id.* at n.6. Subsequent cases, however, have expanded the scope of the maritime economic loss rule to consumer transactions. *See, e.g.*, *Reliance Ins. Co. v. Carver Boat Corp.*, No. WMN-96-194, 1997 U.S. Dist. LEXIS 16658, at *6 (D. Md. May 29, 1997) ("[I]n light of the clear consensus in decisions addressing this issue, the court finds that the *East River* rule must be applied in the non-commercial as well as in the commercial context."); *id.* at *4 (collecting cases); *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 201 (D. Md. 2008) ("Most courts that have considered the issue have held that *East River* applies in the consumer context."). The maritime economic loss rule has also been applied to cases involving service contracts. *See, e.g.*, *R.A.M. Sourcing Agency, Inc. v. Seaboard Marine, Ltd.*, 995 F. Supp. 1465 (S.D. Fla. 1997) (dismissing tort claims under maritime economic loss rule where tort arose from the mis-delivery of cargo). The rationale behind the economic loss rule and its expansion in the maritime context is to prevent "contract law" from "drown[ing] in a sea of tort." *E. River*, 476 U.S. at 866, 106 S. Ct. at 2300.

## D.   Application

Although Lebowski devotes significant attention to explaining why the economic loss rule should not apply in this case, neither party draws a distinction

11

between intentional and unintentional tort claims.  To the extent Lebowski asserts

unintentional torts against Third-Party Defendants, these claims are subject to

dismissal pursuant to the maritime economic loss rule.  *See, e.g.*, *Am. Petroleum &*

*Transp., Inc. v. City of New York*, 737 F.3d 185, 195-06 (2d Cir. 2013) ("[W]e now

explicitly accept the broad rule . . . that economic losses are not recoverable for an

unintentional maritime tort in the absence of physical injury, mindful that for some

categories of claims, exceptions may well be appropriate.").  Accordingly, the

Court dismisses Lebowski's negligence claim (Count IV) with prejudice as this

unintentional tort is inextricably tied to Lebowski's breach of contract claim.[4]

---

[4] The negligence claim also fails to state a claim on which relief can be
granted because Lebowski has not alleged a prima facie case.  To state a
negligence claim under Michigan law, a plaintiff must allege four elements: duty,
breach, causation, and damages.  *Lelito v. Monroe*, 273 Mich. App. 416, 418-19,
729 N.W.2d 564, 566 (2006).  "The Michigan Supreme Court has held that in 'tort
actions based on a contract,'" such as the case here, "'courts should use a 'separate
and distinct mode of analysis.'"  *Galati v. Wells Fargo Bank*, No. 11-11487, 2011
U.S. Dist. LEXIS 126124, at *21-22 (E.D. Mich. Nov. 1, 2011) (unpublished)
(quoting *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 467, 683 N.W.2d 587,
592 (2004)); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1134
(6th Cir. 1995) ("Michigan law 'is well-settled that an action in tort requires a
breach of duty separate and distinct from a breach of contract.'") (quotation
omitted).  In this analysis, "the threshold question is whether the defendant owed a
duty to the plaintiff that is separate and distinct from the defendant's contractual
obligations.  If no independent duty exists, no tort action based on a contract will
lie."  *Galati*, No. 11-11487, 2011 U.S. Dist. LEXIS 126124, at *22.

Here, Lebowski has not alleged that Third-Party Defendants owed him a
duty separate and distinct from the contractual obligations.  In fact, the purported
breach arises from the contractual obligations.  These allegations simply establish a
duty that arose, if at all, pursuant to the terms of the Towing Service Agreement.

12

Third-Party Defendants also seek dismissal of Lebowski's fraud count (Count II) as well as his allegations relating to innocent misrepresentation (Count III).[5] Third-Party Defendants do not cite a single published case involving federal maritime jurisdiction in which a court dismissed intentional fraud claims pursuant to the maritime economic loss doctrine; they do, however, cite one recent unpublished decision: *BVI Marine Construction Limited*, No. 12-80225, 2013 U.S. Dist. LEXIS 178883. The Court finds *BVI Marine* persuasive on the issue of whether intentional tort claims may be dismissed pursuant to the maritime economic loss rule.

The plaintiff in *BVI Marine* "entered into a Charter Party with the" defendant whereby the plaintiff was to furnish defendant with two vessels (one equipped with a twenty-two ton crane) and "a standby boat to transport the crew from the shore to the drilling vessels." *Id.* at *1-2. The defendant did not inform the plaintiff of any performance issues during the execution of the service contract but they apparently existed, as the defendant did not pay the plaintiff in full and claimed that the plaintiff's performance problems resulted in reputational damage and lost business. *Id.* at *2. After engaging in a discussion of which law –

_____

[5] To the extent that Lebowski contends that innocent misrepresentation sounds in contract because Michigan law recognizes it as a defense to an action for breach of contract, this argument misses the mark. Third-Party Defendants have not asserted any claims against Lebowski and he therefore has no reason to invoke innocent misrepresentation as a defense. (Third-Party Pl.'s Resp. 12-13.)

maritime or Florida – governed the action, the court applied maritime law and dismissed the plaintiff's fraud in the execution of the contract, fraudulent misrepresentation, and negligent misrepresentation counts with prejudice, finding these claims barred by the maritime economic loss doctrine.[6]  *Id.* at *19. Although the *BVI Marine* decision does not discuss the distinction between unintentional and intentional torts and contains no citation to cases dismissing intentional tort claims pursuant to the maritime economic loss doctrine, the decision noted that "when an enforceable contract exists, it is preferable to resolve disputes on the basis of the contractual relationship."  *Id.* at *11 (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S. Ct. 134 (1927)).

In addition to the persuasive value of *BVI Marine*, the Court is influenced by what the United States Court of Appeals for the Third Circuit described as "an

---

[6] The court determined that maritime law governed the dispute because a conflict existed between the maritime economic loss doctrine and Florida's economic loss doctrine and the justifications for the admiralty policy were strong, thus counseling application of the maritime rule.  *BVI Marine Constr. Ltd. v. ESC-Florida, L.L.C.*, No. 12-80225, 2013 U.S. Dist. LEXIS 178883, at *10-13 (S.D. Fla. Dec. 20, 2013) (unpublished) (noting that Florida law, unlike maritime law, applies the economic loss rule only to product liability actions).

In this case, there is no indication that Michigan law is inconsistent with maritime law.  Michigan's economic loss rule precludes unintentional tort claims. *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612 (1992).  Michigan's economic loss rule also precludes certain intentional torts, including fraud, although "courts generally have distinguished fraud in the inducement as the only kind of fraud claim not barred by the economic loss doctrine."  *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 371, 532 N.W.2d 541, 544 (Mich. Ct. App. 1995).

emerging trend . . . 'recognizing a limited exception to the economic loss doctrine for fraud claims, but only where the claims at issue arise independently of the underlying contract.'"  *Werwinksi v. Ford Motor Co.*, 286 F.3d 661, 676 (3d Cir. 2002) (quoting *Raytheon Co. v. McGraw-Edison Co.*, 979 F. Supp. 858, 870 (E.D. Wis. 1997)).  In explaining this emerging trend, the Third Circuit relied on *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 532 N.W.2d 541 (Mich. Ct. App. 1995), a case decided by the Michigan Court of Appeals.  In *Huron Tool*, the Michigan Court of Appeals reasoned that an exception to the economic loss doctrine was justified for fraud in the inducement claims because it "addresses a situation where the claim is that one party was tricked into contracting."  *Id.* at 371, 532 N.W.2d at 544 (citation omitted).  The decision distinguished between fraudulent behavior that induces one party to enter into a contract and a dishonest party's misrepresentations regarding the quality or character of the goods that are the subject of the contract, observing that the former situation constitutes an exception to the economic loss doctrine whereas the latter does not.  Although *Huron Tool* involved a contract for goods as opposed to services, the rationale is equally applicable to this action because the allegations in the Third-Party Complaint amount to alleged misrepresentations about the quality or character of the service sold (i.e., whether certain types of groundings were covered by the Towing Service Agreement).  Such allegations are barred by the

15

economic loss doctrine.  Not only are Lebowski's fraud and breach of contract

claims virtually indistinguishable, but Lebowski and Third-Party Defendants were

parties to an enforceable contract.  Therefore, this Court believes that the proper

remedy for these purported misrepresentations – whether couched as intentional or

innocent misrepresentations – rests in contract law, not that of tort.

Even if the fraud count was not barred by the economic loss doctrine, the

Court is confounded by the assertions made in the Third-Party Complaint

regarding Third-Party Defendants' alleged misrepresentations.  The allegation that

"BoatUS represented to Lebowski that it would provide, at no charge to Lebowski,

marine assistance including ungroundings and towage at no cost to Lebowski[,]"

(Third-Party Compl. ¶ 28), is entirely inconsistent with the plain language of the

Towing Service Agreement Lebowski entered into with BoatU.S.  This agreement

– referenced in Lebowski's pleading and undoubtedly central to the claims asserted

therein – clearly sets forth the scope of coverage.[7]  (*See* ECF No. 28-2.)  For

instance, the agreement provides that "[u]pon authorization, Member is eligible for

Paid Services up to $125 per hour from breakdown location to the nearest repair

facility and soft ungrounding up to $10 per foot of boat length . . . To receive

reimbursement consideration, invoice must be submitted within 90 days."  (*Id.*)

The agreement further provides: "This Towing Service Agreement . . . does not

---

[7] It appears that counsel neglected to attach the document as Exhibit A to the Third-Party Complaint despite referring to it as such in paragraph ten.

apply to: . . . salvage, including but not restricted to hard groundings, or assistance requiring more than one vessel, pumps, divers, airbags or other special equipment[.]"  (*Id.*)  This language undermines the veracity of Lebowski's allegations regarding BoatU.S.'s purported misrepresentations.  Because the documentary evidence plainly contradicts Lebowski's allegations, the Court is not required to construe the allegations as true.

For all of these reasons, the Court agrees with Third-Party Defendants that Lebowski's fraud count (Count II), as well as his innocent misrepresentation count (Count III), are subject to dismissal pursuant to Rule 12(b)(6).

The Court now turns to the final count that is the subject of Third-Party Defendants' Motion to Dismiss: Lebowski's claim that Third-Party Defendants violated the MCPA (Count V).  The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws § 445.903(1).[8]  Lebowski contends that BoatU.S. engaged in

---

[8] As relevant to this action, the MCPA deems the following unlawful:

(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

(m) Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction. . . .

17

several unlawful practices under the act, specifically alleging that it "[f]alsely represent[ed] the terms of its marine assistance coverage[;] [f]alsely represent[ed] through its agent that its marine assistance coverage did not apply to the situation of the boat[;] [f]alsely represent[ed] that the situation of the boat amounted to a 'hard grounding' not covered by its contract with Lebowski[;] [c]aused a probability of confusion with respect to the authority of its agent, St. Clair . . . [and] with respect to Lebowski's rights and its obligations under the contract[; and] [f]alsely represent[ed] through its agent that the situation of the boat required salvage, when it did not."  (Third-Party Compl. ¶¶ 47(a)-(f).)

    As an initial matter, these allegations suffer from the same deficiencies described in connection with the allegations of fraud.  The Towing Service Agreement contains rather clear language delineating the scope of its coverage and there is no indication in the Third-Party Complaint that St. Clair is properly characterized as BoatU.S.'s agent such that holding BoatU.S. accountable for St. Clair's alleged misconduct is proper.  Further, nothing in the Third-Party Complaint supports the claim that BoatU.S. falsely represented the nature of the grounding.  In sum, the allegations set forth in the pertinent pleading fail to

---

    (s) Failing to reveal a material fact, the omission of which tends to
    mislead or deceive the consumer, and which fact could not reasonably
    be known by the consumer. . . .

Mich. Comp. Laws § 445.903(1)(a), (m)-(n), (s).

18

"nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  As a result of the pleading deficiencies, the Court need not consider whether Lebowski's MCPA count is barred by the economic loss doctrine.  Instead, the Court dismisses Count V for failure to state a claim upon which relief can be granted.

## IV.    CONCLUSION AND ORDER

Having addressed and dismissed each count that is the subject of the pending motion, the Court **GRANTS** Third-Party Defendants' Motion to Dismiss and **DISMISSES** Counts II-V of the Third-Party Complaint **WITH PREJUDICE**. Because Count I remains, Third-Party Defendants remain in this action.

**IT IS SO ORDERED**.

Date:  June 3, 2014


                                     s/PATRICK J. DUGGAN
                                     UNITED STATES DISTRICT JUDGE


Copies to:

**Brandon John Wilson, Esq.**
**Kenneth B. Vance, Esq.**
**Brian J. Miles, Esq.**